UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL T. SMITH, as Personal Representative of the Estate of JEANA MICHELLE ROGERS, deceased, et al.,

Plaintiffs,

v.

NAPHCARE, INC., an Alabama Corporation, et al.,

Defendants.

CASE NO. 3:22-cv-05069-DGE

ORDER GRANTING DEFENDANTS KITSAP COUNTY AND NAPHCARE'S MOTIONS TO DISMISS (DKT. NOS. 51, 68) AND DENYING KITSAP COUNTY'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 54)

## I INTRODUCTION

This matter comes before the Court on Defendant Kitsap County's Motion to Dismiss for Failure to State a Claim (Dkt. No. 51), Motion for Partial Summary Judgment (Dkt. No. 54), and Defendants NaphCare and NaphCare's Out-of-State Leadership's Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction (Dkt. No. 68). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the record and

hereby GRANTS Defendants' Motions to Dismiss and DENIES Kitsap County's Partial Motion for Summary Judgment.

## II BACKGROUND

This action arises out of the suicide of Jeana Michelle Rogers ("Jeana Rogers") while she was a pretrial detainee at Kitsap County Jail ("Jail"). (Dkt. No. 41 at 15.) Plaintiffs are Michael T. Smith, as personal representative for the Estate of Jeana Michelle Rogers, and Jeana Rogers' surviving four minor children. (*Id*. at 3.)

Defendants are Kitsap County, a municipal corporation responsible for administering the Kitsap County Jail and NaphCare, Inc. ("NaphCare"), the healthcare provider at the Jail at the time of Jeana Rogers' death. (*Id*. at 3–12.) There are also several individual Defendants who were either employed by Kitsap County or NaphCare at the time of Jeana Rogers' death.

Jeana Rogers was a member of the Suquamish Tribe. (*Id*. at 13.) She had a history of mental illness, including diagnoses of bipolar disorder and major depressive disorder, and had been receiving mental health treatment at the Suquamish Tribal Wellness Center between October 2017 through September 2018. (*Id.*)

On September 2, 2018, Jeana Rogers was booked at the Jail and was placed in psychiatric care. (*Id.*) Jeana was released from the Jail but was re-booked on October 27, 2018 after being arrested by Kitsap County Sheriff's Officers. (*Id.*)

Throughout the next two months, Jeana Rogers had many encounters with mental health professionals and officers at the Jail. On December 9, 2018, Jeana Rogers was seen by a mental health professional after submitting a medical kite and reporting that she was experiencing depression. (*Id.* at 14.) She was seen by a mental health professional again on January 10, 2019. (*Id.*) On January 17, 2019, she was given an infraction after being observed by Defendant Sara

Timmons entering a bathroom with a blanket around her shoulders. (*Id.*) On January 24, 2019, she again saw a mental health professional where she was observed as "clearly disorganized in her thoughts with delusional content." (*Id.*) On January 27, 2019, Defendant Jordan Campbell responded to Jeana Rogers pushing the emergency button in her cell. (*Id.*)

On February 19, 2019, Jeana Rogers spoke with Defendant Melanie Daniels during a walk-through of her cell. (*Id.*) Jeana Rogers told Defendant Daniels that was "depressed" and that she "should just have a heart attack and then it'll be resolved." (*Id.*) Defendant Daniels reported this to her supervisor Defendant Wade Schroath. (*Id.*)

Later that day, Defendant Daniels observed Jeana Rogers picking toilet paper out of the vent above the toilet in her cell. (*Id.* at 15.) Three-and-a-half hours later, Defendant Elvia Decker found Jeana Rogers unconscious with a mattress cover around her neck on top of the toilet in her cell. (*Id.*) Jeana Rogers was moved to Harrison Hospital where she was pronounced dead the next day. (*Id.*)

Plaintiffs sue Defendants Kitsap County, several named and unnamed Kitsap County employees, NaphCare, NaphCare's Out-of-State Leadership[1] executives, and NaphCare employees working at the Jail when Jeana Rogers was detained. Plaintiffs have brought claims under 42 U.S.C. § 1983, 42 U.S.C. § 12132 (Americans with Disabilities Act), and 29 U.S.C. § 701 (Rehabilitation Act), and for negligence, gross negligence, and medical negligence.

Plaintiffs filed their Complaint on February 1, 2022. (Dkt. No. 1.) Plaintiffs filed their Amended Complaint on April 19, 2022. (Dkt. No. 41.) On May 19, 2022, Kitsap County moved

[1] The NaphCare's Out-of-State Leadership Defendants are Defendants Jim McClane, Susanne Moore, Marsha Burgess, Amber Simpler, Jeffrey Alvarez, Bradford McLane, Cornelius Henderson, and Gina Savage. Plaintiffs also identify these individuals as "NaphCare Policymaking Defendants." (Dkt. 41 at 12.)

to dismiss and for partial summary judgment. (Dkt. Nos. 51, 54.) On June 16, 2022, Defendants NaphCare and Naphcare's Out-of-State Leadership filed their own Motion to Dismiss. (Dkt. No. 68.)

## III DISCUSSION

### A. Legal Standard

1. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (citations omitted).

2. Federal Rule of Civil Procedure 8(a)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief." To comply with Federal Rule of Civil Procedure 8(a)(2), a plaintiff "must plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case[.]" *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000). Although Federal Rule of Civil Procedure 8 "encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the

grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

**B. Plaintiffs Fail to Adequately Allege an Americans with Disabilities Act Claim Against Kitsap County**

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim of disability discrimination under Title II, a plaintiff must allege four elements:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citations omitted).

Kitsap County moves to dismiss Plaintiffs' ADA claim contending that "[t]he Complaint does not state Ms. Rogers was excluded from participation in any services, programs, or activities. The Complaint also fails to allege any facts to suggest that Ms. Rogers was excluded from any such activities by reason of a disability." (Dkt. No. 51 at 6.) Additionally, NaphCare alleges that Plaintiffs have not adequately alleged that Jeana Rogers had a disability. (Dkt. No. 68 at 18.)

Plaintiffs' Response puts forth two arguments: 1) Jeana Rogers had a disability and despite being seen by doctors and mental health professionals, "no interventions or treatment were provided[,]" and 2) "Kitsap County and NaphCare failed to institute adequate policies and

procedure or train its employees on how to accommodate individuals with disabilities, such as Jeana." (Dkt. No. 65 at 6–7.)

1. <u>Plaintiffs Fail to Allege Jeana Rogers Had a Qualifying Disability</u>

An individual has a qualifying disability under the ADA if the individual: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1).

The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. 29 C.F.R. § 1630.2(j). A major life activity is a function "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." § 1630.2(i). The ADA Amendments Act of 2008 clarified what it means to be substantially limited by an impairment:

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

§ 1630.2(j)(ii).

Plaintiffs here contend Jeana Rogers had a qualifying disability because she had "a well-documented history of serious mental illness, including diagnoses of bipolar disorder and major depressive disorder." (Dkt. No. 41 at 13.) Although the FAC states that Jeana Rogers had a history of mental illness, there are no allegations that such mental illness substantially limited a major life activity. The FAC does state that on January 24, 2019 a mental health professional noted that they witnessed Jeana Rogers being "clearly disorganized in her thoughts with delusional content." (*Id*. at 14.) However, as alleged in the FAC, the Court finds that Plaintiffs

have not adequately alleged that Jeana Rogers mental impairments caused her to be substantially limited in a major life activity. Perhaps such mental impairments described in the FAC did in fact cause Jeana Rogers to be substantially limited in a major life activity, however the FAC has failed to make such allegations.

Thus, the Court finds that Plaintiffs have failed to adequately allege a disability under the ADA.[2]

2. Plaintiffs Fail to Adequately Allege Jeana Rogers was Denied Benefits or Discriminated Against Based on an Alleged Disability

The plain language of the ADA requires that the exclusion or discrimination at issue be "by reason of such disability." 42 U.S.C. § 12132. "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (citations omitted).

Kitsap County alleges that the FAC fails to provide factual allegations that the Jail excluded Jeana Rogers from services or programs it provided based on a disability. (Dkt. No. 51 at 6.) The FAC alleges that Jeana Rogers was placed in "general population" despite having

[2] Plaintiffs cite *Palacios v. Cnty. of San Diego*, 2020 WL 4201686, at *13 (S.D. Cal. July 22, 2020) and *Carter v. Cain*, 2019 WL 846053, at *11 (M.D. La. Feb. 21, 2019) in support of their argument that they have adequately alleged Jeana Rogers had a disability. (Dkt. No. 65 at 6.) But in *Palacios v. Cty. of San Diego*, the court found a pretrial detainee had a qualified disability after plaintiff pled "he suffered from a mental impairment that substantially limited his neurological functions and other major life activities. Defendants were actually aware of [the detainee]'s disability on March 18, 2019, including knowledge that [the detainee] was diagnosed with schizophrenia, had a history of suicidality, and was actively suicidal." Complaint at 24, *Palacios v. City of San Diego*, No. 20-450 (S.D. Cal. March 10, 2020). In *Carter v. Cain*, the court found the plaintiff's history of "mental illness, psychosis, paranoia, acute anxiety, [and] hallucinations, and that he was at high risk of suicide" qualified as a disability under the ADA because "[the p]laintiff's allegations describe how Terrance Carter's mental illness caused him debilitating anxiety and even interfered with his ability to perceive reality." 2019 WL 846053, at *11 (M.D. La. Feb. 21, 2019).

serious mental illness. (Dkt. No. 41 at 13.) The FAC also alleges that while at the Jail Jeana Rogers was seen by mental health professionals several times but that "[n]o interventions or treatment were provided." (*Id*. at 14.) These factual allegations do not allege that Jeana Rogers was "excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity[.]" *Thompson*, 295 F.3d at 895. Instead, Plaintiffs allege that Jeana Rogers was placed in general population and not properly treated for her mental health issues, which is not actionable under the ADA.

3. <u>Plaintiffs Allegation that Defendants Violated the ADA by Failing to Train its Employees</u>

Plaintiffs also allege Kitsap County and NaphCare are liable under the ADA under a *Monell* failure to train theory that they "failed to institute adequate policies and procedure or train its employees on how to accommodate individuals with disabilities, such as Jeana." (Dkt. Nos. 41 at 28; 65 at 7–8.) But as this Order has found that Plaintiffs have not adequately alleged Jeana Rogers had a disability or that Plaintiffs adequately stated a *Monell* failure to train claim, discussed below Section III.D., the Court need not address those arguments at this time.

Thus, Plaintiffs' Americans with Disabilities Act claim is DISMISSED with leave to amend.

**C. Plaintiffs Fail to State a Rehabilitation Act Claim**

A plaintiff bringing a Rehabilitation Act claim thus "must show that '(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.'" *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). "The standards used to

determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). Therefore, for the same reasons discussed above, Plaintiffs fail to state a Rehabilitation Act Claim against Kitsap County.[3]

**D. 42 U.S.C. § 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing: (1) the conduct about which they complain was committed by a person acting under the color of state law; and (2) the conduct deprived them of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that they suffered a specific injury as a result of the conduct of a particular defendant, and they must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).

A pretrial detainee has a substantive due process right under the 14th Amendment to be protected from harm during custody. *Castro*, 833 F.3d at 1067. As relevant here, that right may be violated by a correctional facility's failure to adequately address the detainee's medical needs, including an imminent risk of suicide. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1122–23 (9th Cir. 2018). In this Circuit, such claims are "evaluated under an objective deliberate indifference standard." *Id.* 1124–25. Specifically,

> the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances

[3] Plaintiffs indicated in their Response to NaphCare's Motion to Dismiss that they "agree to dismiss their Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims against NaphCare." (Dkt. No. 71 at 5.)

> would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. As for the third element, the Ninth Circuit has explained that a plaintiff must "'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (citation omitted).

1. Plaintiffs' Allegations Against the Individual Defendants Fail to Satisfy the Pleading Requirements of Federal Rule of Civil Procedure 8(a)

The purpose of the "short, plain statement" pleading standard is to put defendants on notice of the claims alleged against them and the grounds upon which those claims rest. *Twombly*, 550 U.S. at 555. The Court finds the FAC impermissibly lumps all Defendants together and presents legal conclusions without factual support. (*See generally* Dkt. No. 41 at 24–28.) For example, paragraph 110 states that "Kitsap Jailer Defendants, Kitsap Defendants Doe, and NaphCare Defendants Doe knew that Jeana faced a substantial risk of harm or death due to her serious mental health condition, yet callously disregarded that risk by failing to take reasonable measures to abate it." (*Id.* at 24.) The FAC provides no factual allegations to support these legal conclusions. For instance, the only factual allegation against Defendant Decker, one of the Kitsap Jailer Defendants, was that she "found Jeana unconscious in a standing position on top of her cell's toilet with her back against the wall." (*Id.* at 15.) There are no factual allegations in the FAC that Defendant Decker knew of Jeana Rogers' history of mental illness or that she made any intentional decisions related to her confinement. Nor does the FAC explain how Defendants who had no interaction with Jeana Rogers would have known about her history of mental illness or how they failed to take reasonable measures to abate the risks associated with her mental illness.

This type of exercise can be applied to the majority of the conclusory allegations made in paragraphs 109 through 127. In short, rather than providing factual allegations that puts each Defendant on notice as to what conduct they are alleged to have committed or were aware of (and how they were aware), broad conclusory allegations are made as to all individual Defendants.

The Court therefore DISMISSES Plaintiffs § 1983 claims against all individual Defendants with leave to amend.

2. Plaintiffs Fail to Adequately Plead a *Monell* Claim

Local government entities may be sued under Section 1983 for monetary or equitable relief where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–94 (1978) (stating that the unconstitutional acts of a government agent cannot, standing alone, lead to municipal liability; the policy of the governmental entity of which the official is an agent must be the "moving force [behind] the constitutional violation"); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

"To impose *Monell* liability on a municipality under Section 1983, plaintiff must prove: (1) [that he] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quotations omitted).

A plaintiff can satisfy *Monell*'s policy requirement in one of three ways. First, the plaintiff can prove that the local government employee committed the alleged constitutional

violation "pursuant to an expressly adopted official policy." *Id*. (quotations omitted). Second, the plaintiff can establish that the local government employee committed the alleged constitutional violation under a "longstanding practice or custom." *Id*. (quotations omitted). "Such circumstances may arise when, for instance, the public entity 'fail[s] to implement procedural safeguards to prevent constitutional violations' or, sometimes, when it fails to train its employees adequately." *Id*. (quotations omitted). Third, the plaintiff can prove that "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 974 (quotations omitted).

To adequately plead a *Monell* claim against a local governmental entity, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotation marks and citation omitted). Following *A.E.*, district courts have accordingly required plaintiffs to "specify the content of the policies, customs, or practices the execution of which gave rise to [the] Constitutional injuries." *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013).

Here, the FAC refers to many policies and customs that Plaintiffs allege were followed by the individual Defendants. (Dkt. No. 41 at 18–28.) But many of these alleged policies and customs are not supported by factual allegations of how they gave rise to the constitutional violations alleged by Plaintiffs. For example, paragraph 118 alleges that "Kitsap County,

NaphCare, and their Policymaking and Supervising Defendants had an unwritten policy of understaffing and indifference to inmate supervision that was maintained with deliberate indifference." (*Id*. at 26.) But the FAC provides no factual allegations that the Jail was understaffed or that understaffing amounted to deliberate indifference that was the moving force behind Jeana Rogers' death.

Paragraph 83 states that "Kitsap County, NaphCare, and their Policymaking and Supervisory Defendants failed to enforce policies and procedures for suicide prevention, including, but not limited to, policies and procedures for prisoner intake and monitoring of prisoners." (*Id*. at 20.) But the FAC provides no factual allegations of Jeana Rogers' intake beyond that she was "placed in general population" after she was booked. (*Id*. at 13.) Paragraph 80 states that "Kitsap County, NaphCare, and their Policymaking and Supervisory Defendants maintained a policy of not regularly monitoring inmates[,]" but there are no factual allegations that failing to regularly monitor inmates was the moving force behind Jeana Rogers' death.

Furthermore, despite the many allegations that the Kitsap Policymaking Defendants "approved and ratified the acts and omissions of the employees[,]" there are no factual allegations within the FAC to support these allegations. (*Id*. at 4–5.)

In short, Plaintiffs put forth numerous policies without supporting factual allegations or how the policies are the moving force behind the constitutional violations.

3. Persistent and Widespread

To base *Monell* liability on a longstanding practice or custom, the custom must be "persistent and widespread" if it "constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "[I]solated or sporadic incidents" cannot form the basis for a custom. *Id*. Rather, the custom must rest on

"practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id*. (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)).

Defendants argue that "there are insufficient facts plead to establish that Kitsap County acted deliberately indifferent with respect to Jeana Rogers' rights through a widespread custom or practice." (Dkt. No. 51 at 19.) The FAC alleges "Kitsap County, NaphCare, and their Policymaking and Supervising Defendants knew of this excessive risk to inmate health and safety because it was obvious and because numerous other inmates had been injured and/or killed as a result of these inadequacies in the past." (Dkt. No. 41 at 25.) The FAC points to another incident in 2017 when an inmate attempted suicide using a mattress cover like Jeana Rogers. (*Id*. at 17.)

The FAC fails to provide factual allegations for how many of these practices or customs were so persistent and widespread that they were well settled policy of the Jail. The FAC only points to one other incident of a suicide at the Jail. The FAC fails to explain how each of these practices or customs was also present during that incident.

Similarly, a municipality may only be liable under § 1983 for failure to train its employees when evidence shows a "deliberate indifference" to the rights of its inhabitants, so there was an "obvious" need for more or different training without which the constitutional was likely to occur. *City of Canton, Ohio*, 489 U.S. at 389–90. Without additional allegations, the FAC does not indicate an obvious need for additional training.

Thus, Plaintiffs' *Monell* claims are DISMISSED with leave to amend.

**E. Negligence**

Kitsap County raises similar concerns about Plaintiffs' negligence claims. Besides noting that all Defendants' alleged actions are lumped together, Defendants assert there is a "failure to articulate any conduct of any individual as being negligent." (Dkt. No. 51 at 23.) In response, Plaintiffs assert "the negligence alleged in Plaintiffs' FAC [is] meticulously well-defined. The FAC lists a number of policies and national standards that were violated while Jeana was in the County's care and custody, and identifies whether it was the County, its contractor, or an individual employee that violated the applicable standard." (Dkt. No. 65 at 19.)

First, paragraphs 134 through 147 fail to distinguish between the asserted negligence, gross negligence, and medical negligence theories or the standard alleged to apply under each theory. (Dkt. 41 at 29–31.) Second, these paragraphs also impermissibly lump all Defendants together rather than identify a person's alleged conduct that makes Defendant Kitsap County vicariously liable on the theory of respondeat superior. The term "Defendants" alone cannot show Kitsap County's liability for negligence as it does not provide factual allegations about which Defendants are responsible for what conduct. For example, Plaintiffs allege that "Defendants breached that duty, and were negligent, when they failed to adequately treat Jeana's psychiatric needs. Because Jeana's psychiatric needs were entirely ignored, Defendants were grossly negligent." (*Id*. at 30.) Without further detail, the Court cannot discern which individual Defendants Plaintiffs are referring to and why their conduct is attributable to Kitsap County. It also is unclear how such conduct amounts to Kitsap County being liable for gross or medical negligence rather than only negligence.

Therefore, Plaintiffs' negligence claims are DISMISSED with leave to amend.

**F. Personal Jurisdiction Over Individual NaphCare Defendants**

NaphCare asserts that Plaintiffs have failed to make a prima facie showing of personal jurisdiction over NaphCare's Out-of-State Leadership. (Dkt. No. 68 at 5–11.)

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the initial burden of showing that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of its complaint, but must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). When resolving such a motion on written materials, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 800 (internal quotation and citation omitted).

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(l)(A)). Washington's long-arm statute, Washington Revised Code § 4.28.185, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989). The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

Personal jurisdiction can be based on either general jurisdiction or specific jurisdiction. Plaintiff does not allege NaphCare's Out-of-State Leadership are subject to general jurisdiction. Thus, only specific jurisdiction is at issue.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). Two principles guide this inquiry: first, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum" state. *Walden*, 571 U.S. at 284 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In other words, plaintiffs' or third parties' contacts with the forum state cannot be the basis for jurisdiction over the defendant. *Id.* This is because due process in this context "principally protect[s] the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* Second, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.

The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum; (2) the claims arise out of the defendant's forum-related activities; and (3) exercise of jurisdiction is reasonable. *Axiom*, 874 F.3d at 1068 (citations and quotations omitted).

For "purposeful direction," courts apply the three-part test from *Calder v. Jones*, 465 U.S. 783 (1984), which asks whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum, (3) causing harm that it knows is likely to be suffered there. *Axiom*, 874 F.3d at 1069.

NaphCare moved to dismiss arguing that "[t]he Complaint makes no allegations that NaphCare's Out-of-State Leadership purposefully availed themselves of Washington State in any way[,]" because "all of the allegations against NaphCare's Out-of-State Leadership concern their general responsibilities in operating NaphCare on a nationwide basis" and not "any intentional acts that were taken by NaphCare's Out-of-State Leadership . . . ." (Dkt. No. 68 at 9–10.)

It does appear NaphCare has raised significant issues of the lack of purposeful direction and intentional acts by most of, if not all, NaphCare's Out-of-State Leadership Defendants. Indeed, after NaphCare's Motion to Dismiss raised the issue, Plaintiffs' Response only offered support for one of the NaphCare Out-of-State Leadership Defendants—Jim McLane. (Dkt. No. 71 at 13.)

Considering Plaintiffs are being given leave to amend (*see infra*, Section III.H.), the Court will reserve on this issue until after Plaintiffs have filed their new amended complaint. At which point, the NaphCare Out-of-State Leadership Defendants should renew their motion if they believe the new amended complaint fails to establish personal jurisdiction.

**G. Motion for Summary Judgment**

The Local Rules disfavor contemporaneous dispositive motions on discrete issues. LCR(7)(e) ("Absent leave of the court, a party must not file contemporaneous dispositive motions, each one directed toward a discrete issue or claim."). Thus, the Court will not decide Defendant's Motion for Partial Summary Judgment (Dkt. No. 54) for now. If Defendants later move for summary judgment, Defendants should include those arguments raised in Defendant's Motion for Partial Summary Judgment.

**H. Leave to Amend**

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* (citations omitted). In making its determination, a court should consider five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (citations omitted).

The Court finds that the factors favor granting Plaintiffs leave to amend the FAC. There are no allegations of bad faith or undue delay. (Dkt. No. 73 at 10.) Furthermore, although Plaintiffs have already amended once, further amendment is necessary so that both the Defendants and the Court can better understand Plaintiffs' allegations.

Thus, Plaintiffs are directed to file a new amended complaint by **August 12, 2022**.

## IV CONCLUSION

Accordingly, and having considered Defendants' motions, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants' Motions to Dismiss is GRANTED.

1. Defendants' Motions to Dismiss (Dkt. No. 51, 68) are GRANTED.
2. Kitsap County's Partial Motion for Summary Judgment (Dkt. No. 54) is DENIED.
3. Plaintiffs are instructed to file a new amended complaint by August 12, 2022.

Dated this 28th day of July 2022.



David G. Estudillo
United States District Judge